# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| LEISHA HOLDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 21-CV-05071-SRB |
| ) | |
| RANDEE KAISER, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is (1) Defendants City of Carthage, Butler, Dagnan, Walker, and Wicks' Motion for Summary Judgment (Doc. #52); and (2) Defendants Jasper County, Missouri, Cameron Phinney, Derek Frossard, Randee Kaiser and Becky Stevens' Motion for Summary Judgment (Doc. #54). For the reasons stated below, the motions are GRANTED.

## I. BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court. The relevant facts are taken from the record, including the parties' briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed below and are simplified to the extent possible. Additional facts relevant to the parties' arguments are set forth in Section III.

### A. Traffic Stop and Transport to Jasper County Detention Center

This case arises from the death of Daniel D. Holden, Jr. ("Holden") in police custody due to methamphetamine. While on patrol duty, Carthage police officers Brandon Walker ("Walker") and Justin Butler ("Butler") made a traffic stop of a car occupied by Cynthia

Anderson ("Anderson").[1]  During the stop, Anderson told the officers that Holden had a half ounce of methamphetamine, glass pipe, and handgun on his person.  Anderson, Walker, and Butler then reached an agreement that when Anderson picked Holden up, the officers would initiate a second traffic stop.

On July 26, 2018, Anderson and Holden were in a car when Walker and Butler, per the agreement they had with Anderson, initiated a second traffic stop.  Shortly after initiating the traffic stop, another Carthage police officer, Marcus Wicks ("Wicks") arrived at the scene.  After placing Holden in handcuffs, Butler and Wicks searched Holden for drugs.  Butler and Wicks found no illegal drugs, but found a glass methamphetamine pipe and arrested Holden for possession of drug paraphernalia.  Wicks searched Holden again, during which Holden repeatedly and consistently denied having anything illegal on his person.

Wicks transported Holden to Jasper County Detention Center in his patrol car.  Before Holden entered the patrol car, Wicks searched the car and found it to be free of contraband.  At approximately 1:47 a.m., Wicks arrived at the Jasper County Detention Center with Holden.  Upon arrival, Wicks opened the rear passenger door of his patrol car and observed multiple pieces of a crystal-like substance on the rear passenger floorboard, seat, door handle, and around Holden's lips.  Based on his training and experience, Wicks believed the substance was methamphetamine.  Wicks then asked Holden if he had consumed any methamphetamine and Holden denied having done so.

Sergeant Cameron Phinney ("Phinney") and Corporal Donald Frossard ("Frossard") escorted Holden to the booking area shower for a more detailed search of his person.  After removing Holden's shorts and underwear, an empty baggie fell from Holden's groin area; and

---

[1] Holden was not present during this traffic stop.

Holden attempted to cover it up with his foot. Holden again denied have any drugs. Holden followed the instructions given to him, was cooperative and able to stand and walk on his own, and was not hallucinating. Holden did not ask for medical aid of any kind.

At approximately 2:22 a.m., it was noted by jail staff that Holden had become ill and vomited in the holding area. At 2:29 a.m., Frossard attempted to take Holden's vital signs and blood pressure, but was unable to record his blood pressure. At approximately 2:31 a.m., Phinney retrieved a field drug test and tested Holden's vomit; it contained meth. Phinney notified his commanding officer. Holden was transported to a hospital via ambulance for treatment. Holden later passed away at the hospital.

Since at least April 2008, it has been the policy of the City of Carthage that members of its police department will provide appropriate and timely medical care to people encountering the police department who have serious medical needs. Since 2008, the City of Carthage has received no complaints that its police officers had failed to provide medical care.

The policies and procedures of the Jasper County Detention Center provide that medical care other than emergency first aid is to be provided by transfer to a hospital emergency room. Other than the instant suit, neither Phinney nor Frossard had ever been sued or accused of unconstitutional failure to provide medical care.

Defendant Sheriff Randee Kaiser ("Sheriff Kaiser") is the duly elected sheriff of Jasper County. Sherriff Kaiser oversees the detention center, but was not present at the detention center during the relevant times and had no direct interaction with Holden. Captain Becky Stevens ("Stevens"), a named Defendant, is an academy-trained Deputy Sheriff with the Jasper County Sheriff's Department and Jail Administrator. Stevens was not at the detention center during the relevant times and had no interaction with Holden.

On July 22, 2021, Plaintiffs[2] filed the instant case, asserting the following causes of action: (I) Failure to Provide Medical Care and Treatment, 42 U.S.C. § 1983; (II) Municipal Liability under *Monell*,[3] 42 U.S.C. § 1983; and (III) Wrongful Death Pursuant to Mo. Rev. Stat. § 537.080. Defendants now move for summary judgment on all counts. Plaintiffs oppose the motion.

## II.  LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III.  DISCUSSION

Defendants argue they are entitled to summary judgment on all counts because (1) official capacity claims against Carthage officers Walker, Wicks, and Butler are redundant; (2) Plaintiffs do not present viable *Monell* claims against the City of Carthage and Jasper County; (3) Defendants did not violate Holden's constitutional rights; and (4) Defendants are

---

[2] Leisha Holden, Daniel Holden Sr., Anthony Holden, and Andrew Holden bring this suit on behalf of the deceased Holden.
[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

immune from Plaintiffs' wrongful death claim.  Plaintiffs filed an opposition brief, but failed to address Defendants' arguments individually.  Each argument is addressed separately below.

      A.      **Count I: Failure to Provide Medical Care and Treatment**

            1.      **Defendants Walker, Wicks, and Butler**

Defendants Walker, Wicks, and Butler argue they are entitled to summary judgment on Count I because "the City is a named Defendant" and, as a result, "the official capacity claims are redundant and subject to dismissal under Eighth Circuit precedent."  (Doc. #53, p. 18.) Plaintiffs counter that Walker, Wicks, and Butler failed to cite a material fact that could not be genuinely disputed.

"If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."  *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).  A "suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity, a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named."  *King v. City of Crestwood, Missouri*, 899 F.3d 643, 649 (8th Cir. 2018);  s*ee Banks v. Slay*, 875 F.3d 876, 878 (8th Cir. 2017) ("[A]n official-capacity suit is a suit against a government entity in all respects other than name[.]")

Upon review of the parties' arguments and the record, the Court agrees with the Walker, Wicks, and Butler.  The Complaint does not state the capacity in which Walker, Wicks, and Butler are being sued.  As the complaint is silent about the capacity in which Walker, Wicks, and Butler are being sued, the Court must treat Plaintiffs' claims as though they were made only in their official capacity.  Because a claim against a government official in his or her official capacity is the equivalent of a claim against the government entity itself, it is redundant to bring

5

the claim against both the City of Carthage and Walker, Wicks, and Butler. Accordingly, summary judgment as to Walker, Wicks, and Butler on Count I is appropriate.

## 2. Defendants Frossard, Phinney, and Stevens

Defendants Frossard, Phinney, and Stevens argue they are entitled to summary judgment on Count I because Plaintiffs failed to offer evidence showing they knew of and then deliberately disregarded a serious medical condition, or unreasonably failed to provide care to Holden. Plaintiffs counter that Frossard, Phinney, and Stevens failed to show that they are entitled to summary judgment.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations and internal punctuation omitted). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Id.*

Upon review of the parties' arguments and the record, the Court agrees with Frossard, Phinney, and Stevens. Plaintiffs cannot show any decision or action by Frossard, Phinney, and Stevens that had any adverse effect on Holden. The uncontroverted facts establish that Holden refused to cooperate with Jasper County Detention Center officers, and repeatedly denied ingesting any quantity of drugs. When Holden became visibly ill and vomited, Phinney found a field test kit and determined Holden had in fact ingested methamphetamine. Holden was immediately evaluated, with Frossard attempting to take Holden's vital signs and blood pressure. Phinney made the discretionary decision to have Jasper County EMS dispatched to the Detention Center for treatment and emergency transfer to the hospital emergency room pursuant to policy.

6

The autopsy provided by Plaintiffs states that Holden "died as a result of acute methamphetamine intoxication" and the "manner of death is an accident." (Doc. #58-1, p. 9.)

Stevens was not present at the Jasper County Detention Center at the time Holden was there. The record does not support that Stevens failed to provide medical care in violation of § 1983. The record also indicates that Stevens had no supervisory liability under *Monell*. In sum, the record does not show a genuine issue of material fact. Accordingly, summary judgment as to Frossard, Phinney, and Stevens on Count I is appropriate.

### B. Count II Municipal Liability under *Monell*

#### 1. City of Carthage

Defendant City of Carthage argues it is entitled to summary judgment on Count II because "the record does not support a viable *Monell* claim against [Carthage]." (Doc. #53, p. 18.) Plaintiffs counter that "there are still material questions of fact remaining for each claim and that Fed. R. Civ. P. 56(c)(1)(A) has not been met in showing that there remains no question of fact." (Doc. #59, p. 3.)

A governmental entity may be held liable in a § 1983 case for the unconstitutional acts of its employees "when those acts implement or execute an unconstitutional municipal policy or custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The Eighth Circuit has explained that a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," (2) an unofficial "custom," or (3) a "deliberately indifferent failure to train or supervise." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). "We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim." *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015). "Under §1983, 'a claim for

failure to supervise requires the same analysis as a claim for failure to train.'" *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013) (citing *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)). "Neither claim can succeed without evidence the municipality '[r]eceived notice of a pattern of unconstitutional acts committed by [its employees].'" *Id*. (citing *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Id*.

Upon review of the parties' arguments and the record, the Court agrees with the City of Carthage. As noted above, to present a viable § 1983 claim against a municipality, there must have been an unconstitutional policy, custom, or a deliberately indifferent failure to train. *Corwin*, 829 F.3d at 700. The claims against the City of Carthage allege a violation of the Fourteenth Amendment based on assertions that the City of Carthage: (1) had a policy or custom of inadequately training its officers on how to respond to a medical emergency and (2) had a policy or practice of "allowing officers to set up 'sting operations' or 'controlled buys[.]'" (Doc. #1-2, p. 12.)

The Court finds that summary judgment in favor of the City of Carthage is appropriate on Count II. All sworn police officers of the City of Carthage, including the named defendants, graduated from police academies, were certified by the Missouri Peace Officers Standards and Training Commission, and had or were receiving on-the-job training, which is sufficient to overcome failure to train claims. *See Smith v. Watkins*, 159 F.3d 1137, 1139 (8th Cir. 1996) (finding that a police officer who attended a police academy and received additional on-the-job training was adequately trained).

The record does not support the claim that a constitutional violation stems from the policy or custom of allowing officers to set up sting operations or controlled buys in Carthage.

At no time does the record demonstrate that any officer provided methamphetamine to Anderson to give to Holden. Further, the record demonstrates that Carthage did not have a policy, practice, or custom of permitting officers to give illegal narcotics to a third person who would then provide them to another. As a result, summary judgment on Count II regarding Carthage is warranted.

### 2. Jasper County

Defendant Jasper County argues it is entitled to summary judgment on Count II because "there was no violation of Holden's constitutional rights." (Doc. #53, p. 25.) Plaintiffs counter that "it has not yet been established by fact that Defendants Phinney and Frossard did not violate the Plaintiff's rights[.]" (Doc. #58, p. 4.)

The Court agrees with Jasper County. The record demonstrates that no evidence shows Jasper County's training or supervision of Phinney and Frossard was constitutionally inadequate. The policies and procedures of the Jasper County Detention Center provide that all jail officers be trained in first aid and CPR. Phinney and Frossard were trained in first aid and CPR pursuant to the detention center policies and procedures during the relevant times at issue.

Further, there is no evidence of any prior complaints of unconstitutional failure to provide medical care or indifference to a serious medical need by Phinney and Frossard. Neither had any complaints of constitutional failure to provide medical care; neither had ever been disciplined; neither had ever been sued in any capacity as a law enforcement officer. Accordingly, summary judgment on Count II regarding Jasper County is warranted.

C. **Count III: Wrongful Death Pursuant to Mo. Rev. Stat. § 537.080**

1. **Defendants, Walker, Wicks, and Butler**

Defendants Sheriff Walker, Wicks, and Butler argue they are immune from Plaintiffs' wrongful death claim under Missouri law. Plaintiffs counter that summary judgment on Count III fails because "Defendants have provided no facts that show how the Defendants acted and the claim of official immunity is not without limitation[.]" (Doc. #58, p. 4.)

The Missouri Court of Appeals has held that:

> A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610).

*Bennartz v. City of Columbia,* 300 S.W.3d 251, 259 (Mo. App. W.D. 2009) (citation omitted).

Upon review of the parties' arguments and the record, the Court agrees with Walker, Wicks, and Butler. Because only official capacity claims are presented as to Defendants Walker, Wicks, and Butler, the claims against them are treated as though made directly against the City of Carthage. Neither of the first two exceptions outlined in *Bennartz* are implicated under the facts of this case. The third is not a viable option because "[t]he operation of a police department is a governmental function whereby sovereign immunity attaches to a municipality." *State ex rel. City of Grandview v. Grate*, 490 S.W.3d 368, 371 (Mo. banc 2016).

Finally, although the Complaint alleges the City has waived sovereign immunity through the purchase of an insurance policy, the record establishes a waiver has not occurred. Carthage's coverage document provides in relevant part, "This Coverage Document or any amendment to it

10

is not intended to, nor does it waive, nor shall it be construed as waiving in any way whatsoever, any sovereign immunity or official immunity provided to the Member Entities[.]" (Doc. #53-11, p. 4.) The Missouri Supreme Court has previously determined similar language is sufficient to preserve sovereign immunity. *Grate*, 490 S.W.3d at 371 (finding language stating, "This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured" preserved immunity). Accordingly, summary judgment is appropriate as to Walker, Wicks, and Butler on Count III.

### 2. Defendants Sheriff Kaiser, Frossard, Phinney Sovereign Immunity

Defendants Frossard, Phinney, and Kaiser argue that Plaintiffs' wrongful death claim is barred by the doctrine of sovereign immunity. Plaintiffs argue that "claims of sovereign immunity, official immunity, and public duty doctrine are not supported by any provided fact[.]" (Doc. #59, p. 6.)

As discussed previously, official capacity claims are treated as though made directly against the municipality. Neither of the first two exceptions outlined in *Bennartz* are implicated under the facts of this case. The third is not a viable option because the operation of a jail is a governmental function and sovereign immunity would attach to Jasper County. *See Brown v. City of Craig*, 168 S.W.2d 1080, 1082 (Mo. 1943) ("it is apparent that since the city was maintaining the jail in the exercise of its governmental function the matter of its location was for determination by its proper governmental body.")

Further, Jasper County did not waive its sovereign immunity by purchase of insurance when, as here, the policy preserves the defense. *See Conway v. St. Louis County*, 254 S.W.3d 159, 167 (Mo. App. E.D. 2008) ("[T]he Missouri Supreme Court has determined that where the

11

insurance policy includes a disclaimer concerning the waiver of sovereign immunity, it has not been waived under section 537.610.1.") (*citing State ex rel. Board of Trustees of North Kansas City Hospital v. Russell,* 843 S.W.2d 353, 360 (Mo. banc 1992)). Summary judgment is appropriate as to Frossard, Phinney, Sheriff Kaiser in their official capacity on Count III.

### 3. Defendants Sheriff Kaiser, Frossard, Phinney Discretionary Acts

Kaiser, Frossard, and Phinney argue they are officially immune from Plaintiffs' wrongful death claim under Missouri law as their actions were discretionary and without malice. Plaintiffs argue that "no facts have been provided" and the "motion for summary judgment should be denied." (Doc. #59, p. 6.)

> Official immunity provides protection to public officials from liability for negligence related to the performance of their discretionary acts. Official immunity is designed to protect individual public officers who, despite imperfect information and limited resources, must exercise discretion in performance of their duties. A discretionary act requires the exercise of reason and discretion in determining how an act should be done or what course should be pursued. A ministerial function is one which is merely clerical in nature and required to be performed without regard to the officer's judgment or opinion concerning the propriety of the act to be performed. When an officer is responding to an emergency, however, the officer exercises judgment and discretion and is entitled to official immunity.

*Conway v. St. Louis County*, 254 S.W.3d 159, 164 (Mo. App. E.D. 2008) (internal citation omitted.)

A viable wrongful death claim does not exist under the facts of this case against Frossard and Phinney. Based on the record, the actions of the officers in dealing with Holden were discretionary. They were faced with numerous decisions based on the changing circumstances that early morning. There was nothing ministerial or secretarial regarding the situation. Phinney and Frossard had to exercise reason and use their judgment and decide what actions to take and what course to be pursued. Additionally,

Sheriff Kaiser was not even present during the relevant times for this case. Accordingly, summary judgment on Count III regarding all defendants is warranted.[4]

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants City of Carthage, Butler, Dagnan, Walker, and Wicks' Motion for Summary Judgment (Doc. #52); and Defendants Jasper County, Missouri, Cameron Phinney, Derek Frossard, Randee Kaiser and Becky Stevens' Motion for Summary Judgment (Doc. #54) are GRANTED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 12, 2023

---

[4] Because the Court found summary judgment appropriate on all counts, it declines to analyze Defendants' persuasive argument claiming that Plaintiffs failed to respond to any of Defendants' substantive legal arguments or authorities in its briefing.